The Burlington, Cedar Rapids & Northern Railway Com-
pany v. Sherwood et al.

1. **Agent:** POWER OF: RATIFICATION OF PRINCIPAL. Upon considera-
tion of the correspondence which passed between a land owner and his
agent in this case, it is *held* that the agent did not have power to bind
the principal by a sale of the land in question, without the ratification
of the latter; and the fact that he had been in the habit of ratifying the
sales made by the agent did not bind him to ratify this one.

2. **Evidence:** LETTERS: RULE OF STATUTE. Where a letter written to
defendant was introduced, his reply thereto was admissible, under sec-
tion 3650 of the Code.

3. **Practice in Supreme Court:** QUESTION NOT RAISED BELOW. An
objection to evidence as being secondary cannot be made for the first
time in this court.

*Appeal from Palo Alto Circuit Court.*

SATURDAY, DECEMBER 8.

THIS is an action in equity to enforce the specific perform-
ance of an alleged contract for the sale of block 70, in the
town of Emmetsburg. The court found for the defendants.
The plaintiff appeals. The material facts are stated in the
opinion.

*J. & S. K. Tracy* and *Soper & Crawford*, for appellant.

*Struble & Kinne*, for appellees.

DAY, CH. J.—On the 10th day of June, 1881, the following
contract was executed respecting the property in question:
"Received of E. B. Soper three dollars, part purchase price of
block No. 70, Corben & Lawler's plat of Emmetsburg. Said
Soper is to have 30 days from this date in which to determine
whether he will take said property at the price of three hun-
dred dollars cash. But if said Soper decides not to purchase
said block, said money is to be forfeited, but no liability shall

be incurred on account hereof other than said sum so forfeited. If he takes the block and pays the money, a warranty deed shall be made therefor.        J. K. O. SHERWOOD,

"By E. J. HARTSHORN, agent."

On the 8th day of July, 1881, Soper elected to take said property, and paid the balance of the purchase price, and the following indorsement was made upon· the contract: "Received of S. L. Dows, for E. B. Soper, two hundred and ninty-seven dollars, being the balance of the purchase price for block No. 70, of Corbin & Lawler's plat of Emmetsburg, due on the within contract.        J. K. O. SHERWOOD,

"By E. J. HARTSHORN, agent."

On the same day, Soper assigned all his interest in the contract to the Burlington, Cedar Rapids & Northern Railway Company. On the 26th day of July, 1881, Hartshorn reported to Sherwood his action in the premises, as follows: "I send you herewith deed to S. L. Dows, for block 70, for three hundred dollars, your price on the same, and it is well sold, as the block is too flat and wet for desirable residence property, particularly the south half of it." To this communication Sherwood replied on the 10th of August as follows: "I have received your favors of July 26. * * * * As to the lots and blocks wanted by the railroad company, I cannot consent to let them go at any such figures. * * * As I wrote you some time ago, I want to raise prices, and don't want to sell unless I can get higher figures. I think block 70 should now bring $500 to $600."

The whole controversy in this case turns upon the right of Hartshorn to bind Sherwood by a contract as to the price of· the property in question. Hartshorn testifies that he never had any conversations, personal interviews, or personal communications, with the defendant, J. K. O. Sherwood, and that, whatever authority he had from him to act as his agent for the sale of his property, has been by correspondence and written communication. Sherwood resides in the city of New York. The first correspondence material to the matter

in controversy consists of a letter from Sherwood to Hartshorn, of February 18, 1879, as follows: "Mr. Schuman and I went over and fixed values to inclosed list, which would have reached you sooner, were it not for death in my family. In many instances these figures may be too high or too low. I take your judgment largely as to desirable and undesirable locations, etc. I want the whole estate to bring me $6,000 from last January. If a buyer turns up for a lot, it should be sold, keeping this in mind, and getting as much more in proportion as he will pay. I'd like to clean it right off my books, at price named, within the year. If I have to hold and sell in a small way, prices should be increased to cover ten per cent annual interest. Let me know what you can probably sell at my figures or thereabout." This letter contained a list of lots and blocks, with prices attached, the price annexed to block 70 being three hundred dollars. On the 24th of February, 1879, Sherwood wrote Hartshorn as follows: "You have no doubt before this time received the list of lots and blocks, with prices affixed, to which you refer in yours of the 19th, and I shall soon expect to have your views. It is not necessary for me to say more concerning them at this time." On March 7th, 1879, defendant wrote as follows: "Answering your recent favor in relation to town property, I say if I have placed too high figures on the lots in block 23, I consent to reduction. You can bear this in mind, should any inquiry for them be made." On the 5th of February, 1880, Sherwood wrote Hartshorn from Des Moines, as follows: "In hope of meeting you, I remained here since yesterday p. m. I would wait another day, but other business,. and the fact of our having sustained some loss by wind and water to our Manhattan Beach property, of which loss I am just advised by wire, cause me to go up to Emmetsburg, and thence to Kansas, without loss of time. I will see Mr. Tilford and go over the town lot matter with him, and hope, with a better understanding on my part, you will find sale for much of the property the coming spring." Immediately

after writing this letter, Sherwood went to Emmetsburg, and, in connection with Tilford, an employe in Hartshorn's office during his absence, made out a revised list of prices, upon which also block 70 was valued at three hundred dollars. December 15, 1880, Hartshorn wrote as follows: "You will recollect that we had some correspondence last summer with reference to sale of block No. 132 of your town property here, and you wrote me that the party who had been talking with me about buying it could have it for three hundred and fifty dollars. At the time I did not look over your list of lots and prices, but on doing so recently I find that the list of prices you left with Mr. Tilford, when here last winter, has this block for sale at three hundred dollars. So I judge you wrote that letter without looking over your prices, thinking his offer of three hundred dollars was below your price. I consider three hundred and fifty dollars high for blocks thus located, and do not know of any being sold so high of simi- lar character and location. This party would like said block now, and would pay three hundred dollars cash for it, but he says he would pay no more. As you left it in my hands for sale at that price, I should have felt authorized to have sold it for said sum, but for your letter above refered to. The locality is settled up entirely with Catholic Irish, and the block would not be salable except to one of that class and faith, and I do not believe it will bring more than the above for a long time." To this Sherwood replied, December 21, 1880, as follows: "With regard to block 132, for which you submit offer under date of fifteenth inst., I say I recollect the correspondence and facts you refer to. I told Mr. Tilford distinctly the prices were subject to my approval, and, in all cases where time elapsed before offers were made, interest at the rate of ten per cent should be added to the price fixed. I have taken a good deal of stock in the future of your town, and, if I am to hold my property there and work it slowly, I want to get about as much as others do who own lots of about the same value. I concede you put the matter in a nutshell

as to the effect with the better class of that church and pro-
perty near by, but that class in all communities live, and gen-
erally pay dear for small potatoes, in what to them are favored
spots. I believe sales can be made at stiff prices of every
lot in that locality. Again I say, if the party is prepared to
pay three hundred and fifty cash, and accept by January 1
next, or thereabouts, let him have it. If not, hold it at four
hundred dollars, and mark up all the lots near the cathedral."

On June 10th, 1881, Hartshorn wrote as follows; "A
party desires to purchase the n. e. $\frac{1}{4}$ of block No. 23, being
lots 18 to 23 inclusive, and has offered two hundred dollars
cash therefor. You have the east half of that block, twelve
lots, valued at five hundred and fifty dollars, but it seems
rather high, as the land is of a wet, low order, as you will
recollect. This party only wants the six lots named." To this
Sherwood replied, July 11, 1881, as follows: "I don't care
to sell a part of block 23. I will take from that party five
hundred and fifty dollars cash for the twelve lots, and no less.
If he wants it now, let him close, or, if not, add ten per cent
interest to five hundred and fifty dollars, my figures of a year
ago." July 14, 1881, Sherwood wrote: "Other property
so generally being on the boom, had I not better advance
prices?" The foregoing contains the principal correspondence
respecting the matter in controversy. While it shows that
Hartshorn was placed in charge of the property, and was au-
thorized to negotiate sales, it does not establish Hartshorn's
authority, at the time the contract in question was entered
into, to bind the defendant as to prices. It is true, Tilford
testifies that, at the time the revised list was prepared, it was
given as the prices on the lots, and Sherwood did not instruct
him, as Hartshorn's representative, not to make contracts on
the prices affixed, without first submitting the offer for ratifi-
cation. But this list was prepared in February, 1880, and
the sale in question was not made until June, 1881. In De-
cember, 1880, Sherwood advised Hartshorn that the prices
were to be subject to his approval, and, whether this limita-

tion was or was not imposed when the list was furnished, the letter of December 21, 1880, operated as such limitation. In view of this letter, taken in connection with the other correspondence, we do not think Hartshorn was authorized to sell the block in question at the price fixed in February, 1880. The appellant claims, however, that the letter of December 21, 1880, is not competent evidence. The letter is a reply to a letter introduced by the plaintiff, and, as such, it is clearly competent, under section 3650 of the Code. It is further insisted that the letter is a copy of a copy, which is not admissible, as long as the letter press copies are in existence. No such objection was made in the court below, and it cannot be urged for the first time here. Further, it is claimed that Sherwood has adopted and approved other sales made by Hartshorn. This he clearly had a right to do, under the power which he reserved to pass upon the price. The adoption of one sale does not bind him to approve another. The judgment is

AFFIRMED.